IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Bruce Lee Scott,                    )
                                    )
                Petitioner,         )
                                    )
        v.                          )    CIV 04-376 PHX MHM (VAM)
                                    )
Deputy Warden Ryder, et al.,        )    <u>REPORT AND RECOMMENDATION</u>
                                    )
_____Respondents.)

TO THE HONORABLE MARY H. MURGUIA, U.S. DISTRICT JUDGE.

     Bruce Lee Scott ("petitioner"), currently confined at the Arizona State Prison Complex in Yuma, Arizona, filed a <u>pro</u> <u>se</u> Third Amended Petition for Writ of Habeas Corpus.  Petitioner raises four grounds for relief in the third amended petition. (Doc. 23 at pp. 5-8).  Respondents filed an answer opposing the granting of habeas relief.  (Doc. 30).

                          **I. BACKGROUND**

     Petitioner was charged with the first-degree murder of Charlie Bremer.  On April 13, 2000, petitioner was convicted of the lesser-included offense of second degree murder.  (Doc. 30, Exhibit A at pp. 1-2; Exhibit C at p. 9).  As a result of this conviction, petitioner was sentenced to 18 years in prison.  (Doc. 23 at p. 1; Doc. 30, Exhibit A at p. 2; Exhibit C at p. 9).

     Petitioner appealed his conviction to the Arizona Court of

Appeals raising the following grounds for relief:

**ARGUMENT I**

**THE FIRST DEGREE MURDER STATUTE VIOLATES DUE PROCESS BY ELIMINATING ACTUAL REFLECTION AS A REQUIREMENT TO PROVE PREMEDITATION.**

**ARGUMENT II**

**APPELLANT WAS DENIED DUE PROCESS OF LAW BY THE COURT'S REFUSAL TO ADMIT POLYGRAPH EVIDENCE.**

**ARGUMENT III**

**THE COURT ERRED IN ADMITTING BAD ACTS EVIDENCE AGAINST [PETITIONER], VIOLATING [HIS] DUE PROCESS RIGHTS.**

**ARGUMENT IV**

**DEATH QUALIFYING JURORS IN A JUDGE SENTENCING STATE VIOLATES DUE PROCESS AND DEPRIVED [PETITIONER] OF A FAIR TRIAL.**

(Doc. 30, Exhibit C at pp. 12,18,28 and 33).

In a memorandum decision filed on June 28, 2001, the Arizona Court of Appeals affirmed petitioner's convictions and sentences. (Doc. 30, Exhibit A at p. 12).  The Arizona Supreme Court likewise denied review and the Arizona Court of Appeals entered its order and mandate on November 29, 2001.  (Id. at Exhibit D).

On November 29, 2001, petitioner initiated state post-conviction relief proceedings when he filed a Notice of Post-Conviction Relief pursuant to Ariz.R.Crim.P. 32.1 in the state trial court.  (Doc. 30 at Exhibit E).  Petitioner filed a Rule 32 petition on January 26, 2003, raising the following claim:

> In the aftermath of Apprendi v. New Jersey, 530 U.S. 466 ..., and Ring v. Arizona, ___ U.S. ___, 122 S.Ct. 2428, 2439, ..., the procedure by which the trial court alone determined the aggravating circumstances at sentencing deprived Petitioner of his right to a jury trial and to a determination of their truth beyond a reasonable doubt

An amended petition filed March 24, 2003, raised the same issue. (Doc. 30, Exhibit F).  The trial court dismissed the petition in a minute entry entered on May 19, 2003, finding "no claim presents a material issue of fact or law that would entitle [petitioner] to relief ..."  (Id. at Exhibit G).  In addition, the trial court concluded that petitioner's Apprendi/Ring claim is not "colorable" and the claim was "precluded under Rule 32.2(A)(3), Arizona Rules of Criminal Procedure, as having been waived at trial or upon appeal."  (Id.).

The Arizona Court of Appeals denied a petition for review without comment on June 29, 2004.  (Doc. 30 at Exhibit H).  The Arizona Supreme Court also denied review without comment on April 20, 2005.  (Id. at Exhibit I).  Petitioner filed this Third Amended Habeas petition on April 21, 2006, raising the following grounds:

**GROUND I**

[Petitioner] was Denied Due Process [by] the Court's Refusal to admit Polygraph Evidence, Violating Fifth & Fourteenth Amendments

**GROUND II**

The Court Erred in Admitting Bad Acts Evidence Against [petitioner] Violating [petitioner's] due process rights.  Also violating Fifth & Fourteenth Amendments

**GROUND III**

Death Qualifying Jurors in a Judge sentencing state Violate[s] Due process and deprived [petitioner] of a fair trial. Violates Sixth Amendment, Fifth & Fourteenth Amendments

**GROUND IV**

Fifth, Sixth, and Fourteenth Amendments

3

[The trial courts summary dismissal of petitioner's Apprendi/Ring claim in his Rule 32 petition on the ground that it was not a "colorable" claim and was waived because it was not presented at trial or on appeal was error because "[a]t the time petitioner was sentenced (May 17, 2000), Apprendi v. New Jersey ... had not been decided, and he could not assert an as yet unrecognized basis for a constitutional claim."].

## II. DISCUSSION

Respondents first seek denial of Grounds I, II and IV of the third amended petition on the basis that the claims presented in these grounds have not been properly exhausted in state court and are now procedurally defaulted.  (Doc. 30 at pp. 4-9).

**A. Anti-Terrorism and Effective Death Penalty Act of 1996**

Pursuant to 28 U.S.C. § 2254(d), the following standard for granting a federal habeas petition originating from a state court conviction applies:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable interpretation of the facts in light of the evidence presented in the State court proceedings.

The Act also codifies a presumption of correctness of state court findings of fact.  28 U.S.C. § 2254(e)(1) states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."  As discussed more fully below, these provisions of the Act set the

4

standard for the Court's evaluation of the merits.

The Act limits the district court's discretion to hold evidentiary hearings.  28 U.S.C. § 2254(e)(2) states:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

A petition may be denied on the merits even though it contains unexhausted claims, and the state does not waive exhaustion except by an express waiver on the record.  28 U.S.C. §2254(b)(2) and (3).

**B. Exhaustion and Procedural Default**

1. Law Generally

A federal court has authority to review a federal constitutional claim presented by a state prisoner if available state remedies have been exhausted.  Duckworth v. Serrano, 454 U.S. 1, 3 (1981)(per curiam); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991).  The exhaustion doctrine, first developed in case law and codified at 28 U.S.C. § 2254, now states:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment

1    of a State court shall not be granted unless it appears
     that--

2
         (A) the applicant has exhausted the remedies available
3    in the courts of the State; or

4        (B)(i) there is an absence of available state
     corrective process; or

5
         (ii) circumstances exist that render such process
6    ineffective to protect the rights of the applicant.

7                            .......

8        (c) An applicant shall not be deemed to have exhausted
     the remedies available in the courts of the State,
9    within the meaning of this section, if he has the right
     under the law of the State to raise, by any available
10   procedure, the question presented.

11       The exhaustion requirement can be satisfied in one of two

12   ways.  First, a petitioner can fairly present his or her claims to

13   the Arizona Court of Appeals by properly pursuing them through

14   either the state's direct appeal process or through appropriate

15   post-conviction relief.  See Swoopes v. Sublett, 196 F.3d 1008,

16   1010 (9th Cir. 1999).  Only one of these avenues of relief must be

17   exhausted before bringing a habeas petition in federal court.

18   This is true even where alternative avenues of reviewing

19   constitutional issues are still available in state court.  Brown

20   v. Easter, 68 F.3d 1209, 1211 (9th Cir. 1995); Turner v. Compoy,

21   827 F.2d 526, 528 (9th Cir. 1987), cert. denied, 489 U.S. 1059

22   (1989).

23       Claims presented in habeas petitions are considered exhausted

24   if they have been ruled upon by the Arizona Court of Appeals.

25   However, if the sentence received is life imprisonment, the claims

26   must be presented to the Arizona Supreme Court.  Swoopes, 196 F.3d

27   at 1010.   Although a federal habeas petitioner may reformulate

28                                6

somewhat the claims made in state court, <u>Tamapua v. Shimoda</u>, 796

F.2d 261, 262 (9th Cir. 1986), <u>rev'd in part on other grounds by</u>

<u>Duncan v. Henry</u>, 513 U.S. 364 1995), the substance of the federal

claim must have been "fairly presented" in state court.  <u>Anderson</u>

<u>v. Harless</u>, 459 U.S. 4, 6 (1982)(per curiam); <u>Picard v. Connor</u>,

404 U.S. 270, 278 (1971).  While the petitioner need not recite

"book and verse on the federal constitution," <u>Picard</u>, 404 U.S. at

277-78 (quoting <u>Daugherty v. Gladden</u>, 257 F.2d 750, 758 (9th Cir.

1958)), it is not enough that all the facts necessary to support

the federal claim were before the state courts or that a "somewhat

similar state law claim was made."  <u>Anderson</u>, 459 U.S. at 6.

As an alternative to presenting his claims to the highest

state court, a petitioner can satisfy the exhaustion requirement

by demonstrating that no state remedies remained available at the

time the federal habeas petition was filed.  <u>Engle v. Isaac</u>, 456

U.S. 107, 125 (n. 28)(1982); <u>White v. Lewis</u>, 874 F.2d 599, 602

(9th Cir. 1989).  However, this path is fraught with danger:

> If state remedies are not available because the
> petitioner failed to comply with state procedures and
> thereby prevented the highest state court from reaching
> the merits of his claim, then a federal court may refuse
> to reach the merits of that claim as a matter of comity.

<u>Buffalo v. Sunn</u>, 854 F.2d 1158, 1163 (9th Cir. 1988); <u>see also</u>

<u>Swoopes</u>, 196 F.3d at 1010 (determining that the exhaustion

requirement is satisfied if a petitioner presented a claim to the

Arizona Court of Appeals either on direct review or via a petition

for post-conviction relief).  This failure to comply with

reasonable state procedures is usually characterized as

"procedural default," "procedural bar," or a "waiver."  As

discussed, exhausting state remedies by means of a procedural default is risky.  The burden is on the petitioner to show that he or she has properly exhausted each claim.  Dismissal of the petition is proper when the record does not show that the exhaustion requirement is met.  Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981)(per curiam), cert. denied, 455 U.S. 1023 (1982).  If the unavailability of state remedies is in no way the fault of the petitioner or his or her counsel, the exhaustion requirement will likely be satisfied and a federal court may reach the merits of the petitioner's habeas claims.

In many cases, however, the lack of available state remedies is a direct result of the petitioner's failure to avail himself of the state remedies in a timely or procedurally correct manner.  In such instances, the petitioner has procedurally defaulted, and may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.[1]  Reed v. Ross, 468 U.S. 1, 11 (1984); Wainwright v. Sykes, 433 U.S. 72, 90-91 (1977); see also Teague v. Lane, 489 U.S. 288, 298 (1989); Tacho v. Martinez, 862 F.2d 1376, 1380 (9th Cir. 1988).  "Cause" is the legitimate excuse for the default.  Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991).  "Prejudice" is actual harm resulting from the alleged constitutional violation.  Id.

"Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the

---

[1]Appellate defaults are examined under the same standards that apply when a defendant fails to preserve a claim during trial. Smith v. Murray, 477 U.S. 527, 533 (1986).

term "cause" precise content.'" <u>Harmon v. Barton</u>, 894 F.2d 1268,

1274 (11th Cir.)(quoting <u>Reed</u>, 468 U.S. at 13), <u>cert. denied</u>, 498

U.S. 832 (1990).  The Supreme Court has suggested, however, that

cause should ordinarily turn on some objective factor external to

petitioner, for instance:

> ... a showing that the factual or legal basis for a
> claim was not reasonably available to counsel, (citation
> omitted), or that "some interference by officials,"
> (citation omitted), made compliance impracticable, would
> constitute cause under this standard.

<u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986); <u>see also</u> <u>Harmon</u>, 894

F.2d at 1275; <u>Allen v. Risley</u>, 817 F.2d 68, 69 (9th Cir. 1987).

The standard is one of discretion intended to be flexible and

yielding to exceptional circumstances.  <u>Hughes v. Idaho State</u>

<u>Board of Corrections</u>, 800 F.2d 905, 909 (9th Cir. 1986).  The

"cause and prejudice" standard is equally applicable to <u>pro se</u>

litigants, <u>Harmon</u>, 894 F.2d at 1274; <u>Hughes</u>, 800 F.2d at 908,

whether literate and assisted by "jailhouse lawyers," <u>Tacho</u>, 862

F.2d at 1381; illiterate and unaided, <u>Hughes</u>, 800 F.2d at 909, or

non-English speaking.  <u>Vasquez v. Lockhart</u>, 867 F.2d 1056, 1058

(9th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1100 (1989).

Finally, if a claim has been found to be procedurally

defaulted, the failure to establish cause for the default may be

excused under exceptional circumstances.  For instance:

> ... in an extraordinary case, where a constitutional
> violation has probably resulted in the conviction of one
> who is actually innocent, a federal habeas court may
> grant the writ even in the absence of showing cause for
> the procedural default.

<u>Murray</u>, 477 U.S. at 496; <u>see also</u> <u>Schlup v. Delo</u>, 513 U.S. 298,

327 (1995)(to meet the <u>Murray</u> standard, "the petitioner must show

that it is more likely than not that no reasonable juror would
have convicted him in the light of the new evidence").

2. Application of Law to Grounds I, II and IV

**a. Grounds I and II**

Respondents first contend the claims presented in Grounds I
and II are procedurally defaulted because they were not raised in
state court as violations of federal law or petitioner's federal
constitutional rights.  (Doc. 30 at p. 8).  The Magistrate Judge
disagrees.  Upon review, petitioner presented both of these claims
as violations of his federal constitutional rights.  With respect
to Ground I (alleging a violation of his Fifth and Fourteenth
Amendment rights when the court refused to admit polygraph
evidence of another man, Ramon Alvas), petitioner on direct appeal
alleged that the trial court's failure to admit this evidence
"denied [him] a fair trial in violation of the due process clause
of the Fifth and Fourteenth Amendments to the United States
Constitution as well as Art. II, §§ 4 and 24 of the Arizona
Constitution."  (Doc. 30, Exhibit C at p. 18).  In addition and of
considerable note, in disposing of this claim on appeal, the
Arizona Court of Appeals cited U.S. Supreme Court precedent as
well as Arizona cases which, in turn, specifically cited federal
precedent.  (Doc. 30, Exhibit A at pp. 4-5 (n. 2)).  Thus, in
addition to petitioner's assertion of a federal violation, the
state court's consideration of the federal aspects of this claim
leads to the conclusion that the federal nature of this claim was
squarely before the state courts.

Similarly, with respect to Ground II (alleging the trial

1   court violated his due process rights under the Fifth and
2   Fourteenth Amendments of the U.S. Constitution when it admitted
3   "Bad Acts" evidence against him at trial), petitioner specifically
4   couched this claim in his appellate brief as a "violat[ion] [of]
5   [his] right to due process under the Fifth and Fourteenth
6   Amendments to the United States Constitution ..." (Doc. 30,
7   Exhibit C at p. 28).

8        Although, respondents quote Hiivala v. Wood, 195 F.3d 1098
9   (9th Cir. 1999), this case does not support their contention that
10  petitioner failed to exhaust the federal nature of Grounds I and
11  II in state court.  In Lyons v. Crawford, 232 F.3d 666 (9th Cir.
12  2000), modified on other grounds, 247 F.3d 904 (9th Cir. 2001),
13  the Court noted that Hiivala predicated its determination that a
14  habeas petitioner had not "fairly presented" a federal claim to
15  the fact that the petitioner in that case "'did not refer to the
16  Due Process Clause of the United States Constitution' and 'cited
17  [neither] the Fourteenth Amendment nor any federal case law ..."
18  Lyons, 232 F.3d at 668.  In this case, petitioner's specific
19  invocation of a violation of due process guaranteed by the Fifth
20  and Fourteenth Amendments to the U.S. Constitution, clearly raised
21  the federal nature of his claim.

22       **b. Ground IV**

23       Respondents also contend petitioner procedurally defaulted
24  Ground IV of the Third Amended Petition.  In Ground IV, petitioner
25  asserts his sentences violate his federal constitutional rights
26  because the Arizona sentencing laws permitted the judge to impose
27  sentence based on aggravating factors determined by the judge

28                                   11

1   instead of the jury.  Petitioner contends this is in violation of

2   the holding of the U.S. Supreme Court in Apprendi v. New Jersey,

3   530 U.S. 466 (2000) and Ring v. Arizona, 536 U.S. 584 (2002).

4   (See Doc. 23 at p. 8).

5       Respondents contend that when petitioner raised this claim in

6   his Rule 32 proceeding, the state courts found the claim

7   procedurally deficient.  Specifically, the trial court held that

8   the claim was barred from consideration pursuant to Ariz.R.Crim.P.

9   32.2(a)(3) "as having been waived at trial or upon appeal."  (Doc.

10  30, Exhibit G at p. 1).  The trial court noted that "[t]rial

11  counsel raised the issue for Jury determination of aggravating

12  factors, the motion was denied, and was not appealed."  (Id.).

13      Ariz.R.Crim.P. 32.2 states, in pertinent part:

14      **a. Preclusion**.  A defendant shall be precluded from
        relief under this rule based upon any ground:

15

16                          . . . . .

17      (3) That has been waived at trial, on appeal, or in any
        previous collateral proceeding.

18  The state court's finding that petitioner's Apprendi claim was

19  precluded from consideration on the merits will prevent federal

20  habeas review if the state procedural bar is independent of

21  federal law and adequate to warrant withdrawal of federal relief,

22  that is, the bar is regularly applied by the state courts.

23  Ariz.R.Crim.P. 32.2(a)(3) is an independent and adequate state

24  bar.  See Stewart v. Smith, 536 U.S. 856, 860 (2002) (finding

25  Ariz.R.Crim.P. 32.2(a)(3) determination independent of federal

26  law); Ortiz v. Smith, 149 F.3d 923, 932 (9th Cir. 1998) (finding

27  Rule 32.2(a)(3) regularly followed and adequate).

28                              12

1    However, in analyzing the "waiver" bar of Ariz.R.Crim.P.

2    32.2(a)(3), the Ninth Circuit Court of Appeals has stated that

3    "[u]nder Arizona law, a claim that is of 'sufficient

4    constitutional magnitude' can only be waived 'knowingly,

5    voluntarily, and intelligently.'" Cassett v. Stewart, 406 F.3d

6    614, 622 (9th Cir. 2005). The court went on to hold that "[i]f

7    the right asserted 'is of sufficient constitutional magnitude to

8    require personal waiver by the defendant and there has been no

9    personal waiver, the claim is not precluded." Id.

10   The Cassett Court did not provide specific guidance on what

11   type of claim is of sufficient magnitude to require a personal

12   waiver, however, the court stated that making such a determination

13   is a "fact-intensive inquiry" that "Arizona state courts are

14   better suited to make ..."[2] The court went on to conclude that

15   "[b]ecause it is not clear that the Arizona courts would hold

16   Cassett's federal due process claim barred under Ariz.R.Crim.P.

17   32.2(a)(3), we conclude that his claim is not procedurally

18   defaulted." Cassett, 406 F.2d at 623.

19   In this case, unlike Cassett, the trial court specifically

20   determined that petitioner's Apprendi claim was precluded pursuant

21   to Ariz.R.Crim.P. 32.2(a)(3). Thus, unlike Cassett, the state

22   court in this case expressly concluded petitioner waived his

23   Apprendi claim by failing to present it on direct appeal. (Doc.

24   30 at Exhibit G). Recently, one court held a habeas petitioner's

25

26   [2]The issue involved in Cassett was a claim of violation of due
     process by admission at trial of evidence of a prior guilty plea.
27   See Cassett, 406 F.3d at 619-20.

28                                    13

1  claim procedurally defaulted, distinguishing <u>Cassett</u> because

2  "<u>Cassett</u> did not involve the actual finding of preclusion by the

3  state court.  Here, the Court clearly found preclusion."  <u>Bailey</u>

4  <u>v. Schriro</u>, 2006 WL 1663484 (D.Ariz., June 7, 2006 at *21 (n. 4)).

5  The present case mirrors <u>Bailey</u>, in that the state courts clearly

6  found petitioner's <u>Apprendi</u> claim precluded pursuant to

7  Ariz.R.Crim.P. 32.2(a)(3).  (Doc. 23, Exhibit G at p. 1).   As a

8  result, this claim should be procedurally barred from federal

9  habeas review.

10    **C. Merits**

11    <u>1. Habeas Standard of Review</u>

12    Under the AEDPA the issuance of a writ of habeas corpus is

13  limited to circumstances in which the state court adjudication

14  "resulted in a decision that was contrary to, or involved and

15  unreasonable application of, clearly established Federal law, as

16  determined by the Supreme Court of the United States ... or

17  resulted in a decision that was an unreasonable determination of

18  the facts ..."  28 U.S.C. §2254(d)(1) and (2).  "[A] state court

19  decision applies 'clearly established' Supreme Court law under the

20  AEDPA when it 'applies a rule dictated by [Supreme Court]

21  precedent existing at the time the defendant's conviction became

22  final."  <u>Campbell v. Rice</u>, 265 F.3d 878, 889 (9th Cir.

23  2001)(citing <u>Williams v. Taylor</u>, 529 U.S. 362, 376 (2001)).  As

24  stated by the U.S. Supreme Court:

25        Under the "contrary to" clause, a federal habeas court
          may grant the writ if the state court arrives at a
26        conclusion opposite to that reached by this Court on a
          question of law or if the state court decides a case
27        differently than this Court has on a set of materially

28                                    14

1
2
3
4

> indistinguishable facts.  Under the 'reasonable
> application' clause, a federal habeas court may grant
> the writ if the state court identifies the correct
> governing legal principle from this Court's decisions
> but unreasonably applies that principle to the facts of
> the prisoner's case.
>
> ...

5
6
7
8

> [A]n unreasonable application of federal law is
> different from an incorrect application of federal law
> ...a federal habeas court may not issue the writ simply
> because that court concludes in its independent judgment
> that the relevant state court decision applied clearly
> established federal law erroneously or incorrectly.
> Rather, the application must also be unreasonable.

9   Williams, 529 U.S. at 411, 412-13 (O'Connor, J., concurring in

10  part, and concurring in the judgment).  "In order for a state

11  court's application of federal law to be unreasonable, it must

12  have been clearly erroneous."  Van Tran v. Lindsey, 212 F.3d 1143,

13  1152-54 (9th Cir. 2000).  "Petitioner cannot meet his burden by

14  simply convincing the federal court that he has the better of two

15  reasonable legal arguments."  Wildman v. Johnson, 261 F.3d 832,

16  837 (9th Cir. 2001)(citing Van Tran, 212 F.3d at 1154)).

17          2. Petitioner's Properly Exhausted Claims

18          a. Ground I

19          In Ground I, petitioner contends that his due process rights

20  under the Fifth and Fourteenth Amendments were violated when the

21  trial court refused to admit the results of a polygraph test

22  administered to a prosecution witness, Ramon Alva.  Petitioner

23  argues this evidence revealed Alva was not truthful when he denied

24  during a polygraph exam that he shot the victim, Charlie Bremer,

25  and when he responded affirmatively when asked if petitioner shot

26  the victim.  (Doc. 23 at p. 5).

27          Petitioner raised this claim on direct appeal.  (Doc. 30,

28                                  15

Exhibit C at p. 18).  The Arizona Court of Appeals rejected his claim.  (<u>Id.</u>, Exhibit A at p. 4).  This court must uphold this determination if it was neither contrary to or an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court, or an unreasonable determination of the facts in light of the evidence presented.  <u>See</u> 28 U.S.C. § 2254(d)(1) and (2).

In rejecting this claim, the Arizona Court of Appeals held that the Arizona Supreme Court previously found that "as a matter of law polygraph evidence is not reliable" and "is inadmissible [under Arizona law] absent stipulation of the parties." (Doc. 23, Exhibit A at p. 4 (Citing <u>State v. Rodriquez</u>, 186 Ariz. 240, 250, 921 P.2d 643, 653 (1996)).  The court also cited the U.S. Supreme Court in <u>U.S. v. Scheffer</u>, 523 U.S. 303, 317 (1998) for the proposition that a per se rule against the admission of polygraph evidence is constitutional.  (Doc. 23, Exhibit A at p. 4 (n. 2)).

This court must defer to the Arizona Court of Appeals interpretation of state law on this point.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991).  Moreover, the Arizona Court of Appeals' determination that barring polygraph evidence comported with federal law as interpreted by the U.S. Supreme Court is not an unreasonable application of that court's holding in <u>Scheffer</u>.

In <u>Scheffer</u>, the court noted that "[a] defendant's right to present relevant evidence is not unlimited, ..."  The court held that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials" and that such exclusions do not abridge a defendant's

constitutional rights "so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve." _Scheffer_, 523 U.S. at 308.  The court noted a "lack of scientific consensus is reflected in the disagreement among state and federal courts concerning both the admissibility and reliability of polygraph evidence" and observed that "[m]ost states maintain per se rules excluding polygraph evidence." _Scheffer_, 523 U.S. at 310-11.  The court concluded by noting that "the degree of reliability of polygraph evidence may depend upon a variety of identifiable factors" and that "certain doubts and uncertainties plague even the best polygraph exams." _Id._ at 312.  For these reasons, the court held that "a per se rule excluding all polygraph evidence [does not violate the U.S. Constitution]." _Scheffer_, 523 U.S. at 312.

As a result, the Arizona Court of Appeals' rejection (upheld on review by the Arizona Supreme Court) of petitioner's claim alleging his constitutional right to due process of law was denied when the trial court refused to admit polygraph evidence was a reasonable application of _Scheffer_ and should be upheld.

**b. Ground II**

In this ground, petitioner alleges that the trial court erred in "admitting" several examples of "bad act" evidence, violating his Fifth and Fourteenth Amendment right to due process of law. (Doc. 23 at p. 6).  Petitioner cites the following specific examples:

> (1) the prosecutor elicited from [witness] Leon Taylor
> ... a nonresponsive answer that [petitioner] got out of
> his car with a shotgun.

17

(2) ... Leon Taylor testified that when he came outside, there was a shotgun in his vehicle and [petitioner] was about to get into his vehicle ....

(3) While questioning witness Melinda Shaw, the prosecutor approached and asked the court to be allowed to elicit [from her] that [petitioner] threatened someone with a shotgun.

(4) ... the prosecutor elicited from [witness] Crystal Long that, at a block party [petitioner] was in possession of a "sawed off" shotgun.

(5) Detective Steve Lewis testified that during a search of [petitioner's] home he found some shotgun shells in the bedroom of [petitioner's] grandmother.

(Id.).  Petitioner notes that objections were sustained to some, if not all of this "shotgun" testimony and that the Court even ordered some testimony be stricken.  (See Doc. 23 at p. 6). However, petitioner contends that in spite of this "the jury was well aware that [he] had a 'sawed off shotgun,'" and argues this prejudiced him because "there was no connection what so-ever between [him] carrying a shotgun and the commission of the crime. The crime wasn't comitted [sic] with a shotgun."  (Id.).

In rejecting these claims of error in admitting[3] allegedly "bad act" evidence, the Arizona Court of Appeals focused on state law, namely Ariz.R.Evid. 404(b).  Rule 404(b) states:

Except as provided in Rule 404(c) evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

---

[3]The Court notes the trial court did not admit the evidence complained of in numbers (2) and (3) above and there was no objection to items (4) and (5) above.  Therefore, the only issue preserved is item number (1) above.

18

The language of this rule tracks to a great extent the language of Fed.R.Evid. 404(b).  The court rejected each of these "five instances cited by [petitioner]."  Regarding the first instance of alleged error the court stated:

> ... witness L.T. [Leon Taylor] testified that [petitioner] "had told me that he had gone out and killed (the victim) and that he was the triggerman." L.T. further testified that approximately three weeks later, he and several other people saw [petitioner] at a McDonald's restaurant.  L.T. stated, in a nonresponsive answer, that [petitioner] "got out of the car with a shotgun in his hand."  Defense counsel objected pursuant to Rule 404(b) and moved for a mistrial.  After a lengthy discussion held at the bench, the trial court denied the motion.  L.T. then testified that [petitioner] appeared serious and "asked me if I told anyone about what I knew [about the murder]."  When L.T. replied that he had not, [petitioner] "got back in the car and left."
>
> [Petitioner's] actions (including his demeanor, his use of the shotgun, his question, and his subsequent departure after a negative response from L.T.) were relevant to show his consciousness of guilt .... We conclude that this testimony constitutes direct evidence that [petitioner] committed the charged offense. [Citation omitted].  Thus, we find that the trial court did not abuse its discretion by admitting this evidence.

(Doc. 30, Exhibit A at pp. 6-7).

Concerning the second instance, the Arizona Court of Appeals stated:

> L.T. later described an occasion in which he gave [petitioner] a ride and [petitioner] possessed a shotgun.  L.T. stated that he was about to deliver some pizzas ... when [petitioner] appeared and requested a ride.  L.T. stepped inside to get some sodas, and when he came back outside "there was a shotgun in my vehicle and [petitioner] was about to get in the vehicle." L.T. gave [petitioner] a ride and then [he] exited the vehicle with a shotgun.
>
> Defense counsel objected to the testimony and requested it be stricken and the jury be instructed to disregard the whole matter as irrelevant.  The court granted defense counsel's request and advised the jury that the proffered testimony was "ordered stricken ... and you [the jury] are not to consider that as testimony

..."  The record also reveals that, both in its preliminary and final jury instructions, the court advised the jury to disregard questions and answers for which an objection had been sustained and to not consider any testimony stricken from the record.

We presume that the jury followed the court's instructions. [Citations omitted].  "Experience teaches us that they possess both common sense and a strong desire to properly perform their duties." [Citation omitted].  Accordingly, we find no abuse of discretion in the method used by the trial court to cure the error.

(Doc. 30, Exhibit A at p. 7).

The third instance cited by petitioner concerns testimony from Melinda Shaw.  The Arizona Court of Appeals stated:

While questioning M.S. [Shaw] on redirect, the prosecutor, at a side bar conference requested that the court allow him to elicit testimony that [petitioner] had a shotgun and had threatened people with it, because on cross-examination defense counsel had asked questions for the purpose of indicating that [petitioner] "isn't tough, he just does things without anything to back it up."  Defense counsel objected, arguing that [Shaw's] "knowledge comes from somebody else," and the court sustained the objection.  Because the court disallowed the proffered evidence, and the jury did not hear it, no error exists in this instance.

(Doc. 30, Exhibit A at p. 8).

In the fourth instance, regarding testimony from Crystal Long (C.L.), the Arizona Court of Appeals stated:

Witness C.L. testified that, at a teenage drinking party, "some kid" threatened [petitioner], and petitioner replied "I'm going to do you like I did that kid (the victim) up on Happy Valley."  C.L. asked [petitioner] whether he actually killed the victim, and petitioner replied, "[J]ust you don't worry about it."  Petitioner also showed C.L. a sawed-off shotgun in the back of his truck ....

We find that [petitioner's] verbal and demonstrative response to C.L.'s query was relevant both as an admission, [citation omitted], and to show his consciousness of guilt. [Citation omitted].  We conclude that this testimony constitutes direct evidence that [petitioner] committed the charged offense ....

(Doc. 23, Exhibit A at p. 8).

1   In the final instance, concerning testimony from Phoenix

2   Police Detective Steve Lewis, the Arizona Court of Appeals stated:

3   ... Lewis testified that during a search of the
    residence where [petitioner] lived, he found, among

4   other things, some shotgun shells in [petitioner's]
    grandmother's bedroom .... Viewing the record as a

5   whole, [citation omitted], we cannot say that
    introduction of the shotgun shell testimony reached the

6   foundation of [petitioner's] case, deprived him of any
    right essential to his defense, or deprived him of a

7   fair trial.

8   (Doc. 30, Exhibit A at p. 9).

9   "A state court's procedural or evidentiary ruling is not

10  subject to federal habeas review unless the ruling violates

11  federal law, either by infringing upon a specific federal

12  constitutional or statutory provision or by depriving the

13  defendant of the fundamentally fair trial guaranteed by due

14  process." Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).

15  As a result, petitioner cannot prevail on his contention that the

16  above-described testimony violated his constitutional right to due

17  process of law and denied him a fair trial in violation of the

18  Fifth and Fourteenth Amendments unless he shows that state court's

19  decision to admit the "prior bad acts evidence ... was arbitrary

20  or so prejudicial that it rendered the trial fundamentally

21  unfair." Id.

22  Review of these claims shows the trial court's action did not

23  render his trial fundamentally unfair.  Concerning the testimony

24  of Leon Taylor and Crystal Long, the Arizona Court of Appeals held

25  this testimony amounted to direct evidence of guilt.  In addition,

26  the court's conclusion that Long's testimony that she heard

27  petitioner tell another person at a party "I'm going to do you

28                                  21

like I did that kid (the victim) ..." was an admission showing consciousness of guilt admissible under Ariz.R.Evid. 801(a)(2) and (d)(2) is reasonable.  In another instance, concerning the prosecution's request to question witness Melinda Shaw, the Arizona Court of Appeals correctly noted that the trial court denied the motion and the jury never knew about the question the prosecution sought to ask.

In each of these instances, the Arizona Court of Appeals' determination was a reasonable application of state evidentiary law and, as such, did not violate petitioner's due process right to a fair trial.  See Walters, 45 F.3d at 1357.

Finally, with respect to Detective Lewis' testimony about finding shotgun shells in petitioner's house (grandmother's bedroom), in light of other admissible testimony heard by the jury concerning petitioner's possession/ownership of a shotgun (the testimony of Taylor and Long), testimony that ammunition for the shotgun was found in petitioner's home was not prejudicial.  In sum, the Arizona Court of Appeals' conclusion that this testimony by Lewis did not deprive petitioner of a fair trial is a reasonable conclusion based on the law and facts and this claim should be denied.

**c. Ground III**

In Ground III, petitioner contends that "[d]eath qualifying jurors in a judge sentencing state violate[s] due process and deprived [him] of a fair trial" in violation of his Fifth, Sixth and Fourteenth Amendment rights.  (Doc. 23 at p. 7). Specifically, petitioner asserts that since the jurors determined

1    only his guilty or innocence "questioning [them] regarding the[ir]

2    views on death penalty" was not appropriate and was

3    "unnecessary."[4]  (Id.).  Petitioner contends that"studies ... show

4    that death qualifying juries results in a 'conviction prone' jury"

5    and that a "considerable body of research has been conducted, and

6    it indicates that individuals who favor the death penalty have

7    correlated attitudes which may bias them towards the prosecution."

8    (Id.).

9        The Arizona Court of Appeals rejected this claim on appeal.

10   The court stated:

11       A court may question prospective jurors regarding
         capital punishment where their attitude concerning the
12       death penalty might prevent them from performing their
         duties and making an impartial decision. [Citation
13       omitted].  "The United States Supreme Court has held
         that the Sixth Amendment is violated if the trial jury
14       in a capital case is chosen by excluding for cause
         persons who have general objections to the death
15       penalty.  State v. Anderson, 197 Ariz. 314, 318, para.
         6, 4 P.3d 369, 373 (2000) (emphasis added) (citing
16       Witherspoon v. Illinois, 391 U.S. 510, 521-23 (1968)).
         "However, this rule is not applicable to prospective
17       jurors who state unequivocally that they could never
         impose the death penalty regardless of the facts in a
18       particular case."  Id. at para. 7 (citing Witherspoon,
         391 U.S. at 514).
19       The Arizona Supreme Court has repeatedly approved
         the death qualification process in Arizona, even though
20       juries do not sentence. [Citations omitted] ....
         Moreover, the United States Supreme Court has "rejected
21       the argument that the process produces conviction-prone
         jurors." [State v.] Jones, 197 Ariz. at 309 ... [citing
22       Lockhart v. McCree, 476 U.S. 162, 168-73 & nn. 4-5
         (1986)).

23

24       The U.S. Supreme Court has held that "the Constitution does

25   _____

26   [4]Petitioner was convicted in 2000, prior to the U.S. Supreme
     Court's decision in Ring v. Arizona, 536 U.S. 584 (2002) requiring
27   that a jury determine the factors warranting imposition of a death
     sentence instead of the judge.  See Ring, 536 U.S. at 609.

28                                      23

1   not prohibit the States from "death qualifying" juries in capital

2   cases." <u>Lockhart</u>, 476 U.S. at 173.  In upholding the

3   constitutionality of this practice, the court distinguished "death

4   qualifying" from exclusion of groups based on factors such as race

5   or gender, because "[d]eath qualification, unlike the wholesale

6   exclusion of blacks, women, or Mexican-Americans from jury

7   service, is carefully designed to serve the State's concededly

8   legitimate interest in obtaining a single jury that can properly

9   and impartially apply the law to the facts of the case at both the

10   guilt and sentencing phases of a capital trial." <u>Lockhart</u>, 476

11   U.S. at 175-76.

12       Petitioner does not allege that the trial court engaged in

13   improper conduct in "death qualifying" the jury.  He merely

14   asserts that the act of "death qualifying" denied him a fair trial

15   because it created a likelihood of stacking the jury with members

16   predisposed to side with the prosecution.  The U.S. Supreme Court

17   has held that "death qualifying" a jury does not violate the U.S.

18   Constitution.  The Arizona Court of Appeals determination that

19   this claim was without merit was a reasonable interpretation of

20   the holding in <u>Lockhart</u> and this claim should be denied.

21       **IT IS THEREFORE RECOMMENDED** that the Third Amended Petition

22   for Writ of Habeas Corpus be denied.

23       This recommendation is not an order that is immediately

24   appealable to the Ninth Circuit Court of Appeals.  Any notice of

25   appeal filed pursuant to Rule 4(a)(1), Federal Rules of Appellate

26   Procedure, should not be filed until entry of the district court's

27   order and judgment.  The parties shall have ten (10) days from the

1   date of service of this recommendation within which to file

2   specific written objections with the Court.  Thereafter, the

3   parties have ten (10) days within which to file a response to the

4   objections. Failure to timely file objections to any factual

5   determinations of the Magistrate Judge will be considered a waiver

6   of a party's right to de novo consideration of the factual issues

7   and will constitute a waiver of a party's right to appellate

8   review of the findings of fact in an order or judgment entered

9   pursuant to the Magistrate Judge's Report and Recommendation.

10           DATED this 18th day of September, 2006.

12                          _Virginia A. Mathis_____
                                    Virginia A. Mathis
13                             United States Magistrate Judge

25